## WHITE *v.* COUNTY COMMISSIONERS OF WASHINGTON COUNTY

[No. 146, September Term, 1961.]

*Decided February 20, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, MARBURY and SYBERT, JJ.

*Gorman E. Getty* and *Elwood E. Hauver*, with whom was *Martin V. B. Bostetter* on the brief, for the appellant.

*John M. Colton* and *Norman I. Broadwater*, with whom was *James S. Getty* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff, White, appeals from a judgment *n. o. v.* in favor of the defendant, the County Commissioners of Washington County, a municipal corporation (sometimes referred to below as the "County"), entered in a suit in contract for the rental of a power shovel. The suit (filed in Washington County but, on suggestion of the plaintiff, removed to Allegany County for trial) was brought on the common counts and a special count. At the conclusion of the testimony the common counts were abandoned, and the case was accordingly submitted to the jury under the special count alone.

The special count alleged that the parties on or about March 12, 1958, entered into a contract for the rental to the defendant of a (power) shovel owned by the plaintiff at a monthly rental of $2,268.00, and that the defendant agreed to pay the cost of moving the shovel to the defendant's location, which cost was stated as $830.00. This count further alleged that nothing had been paid by the defendant and that the equipment had not been returned to the plaintiff, and claimed as due the amount of the rental for 17½ months (aggregating $39,-

690.00), plus the $830 moving charge. There were, we think, some differences between the contract as alleged and the evidence, but we find no need to go into that matter.

The court's instructions presented two issues to the jury—first, whether there was a definite agreement between the parties, and second, whether the County Road Superintendent, with whom the contract was claimed to have been negotiated, had authority to bind the County. The jury returned a verdict for the plaintiff for $6,000. The court's instructions, to which no exceptions were taken, limited recovery to an amount equivalent to a rental of $2,268 per month for approximately 2½ months, but in no event to exceed the fair value of the shovel. The time limitation was apparently based on evidence that as a result of a demonstration of the shovel in May or June, following its delivery in March, the County determined that it did not want the shovel and that the plaintiff was so informed, and also that the shovel was never used or operated by the County after the day of its unsatisfactory demonstration.

In granting the defendant's motion for judgment *n. o. v.*, Judge Cobey held that the County Road Superintendent did not have authority to bind the County by the alleged contract and that the plaintiff was, therefore, not entitled to recover. We think that this decision was correct, and we find it unnecessary to consider the other point urged by the appellee to the effect that no definite contract was ever agreed upon.

*Ultra vires* was not pleaded and does not appear to be an issue in the case. The defendant has not claimed that it was beyond the power of the County to enter into the alleged contract upon which this suit is based. The controversy is with regard to the power of its agent, the Road Superintendent, to bind the County by the alleged contract. (See *Pennsylvania R. Co. v. Minis,* 120 Md. 461, 87 A. 1062; Machen, *Modern Law of Corporations,* § 1012, as to the meaning of *ultra vires.*)

The evidence makes it clear that any contract involving the rental of the shovel in this case was not for emergency or merely temporary use. On the contrary, the Road Superintendent was negotiating primarily for the purpose of a power

shovel for permanent use. He wanted to operate it at a shale pit to dig and load shale to be used for road maintenance and construction work in order to obviate the frequent need for, and substantial expense of, bringing in other heavy equipment employed elsewhere to do this digging and loading, and he negotiated for an agreement under which any rental paid for the shovel would be applied against the purchase price. The plaintiff was well aware of all of this, specifically including the intended permanent or long-term use of the shovel.

Unfortunately for the plaintiff, neither a hire-purchaser arrangement nor any other agreement for the rental of this equipment was ever approved by the Board of County Commissioners acting as a Board. There is some evidence to the effect that one of the Commissioners (who died before the trial) had informally approved a hire-purchase arrangement. There was, however, no approval, formal or informal, by the Board acting as such of any agreement for the rental and purchase, or only for the rental, of this shovel. The approval of only one individual member of the Board clearly would not bind the Board. *Inter-City Land Co. v. Baltimore County*, 218 Md. 80, 85, 145 A. 2d 263.

Sections 342A-342E of the Code of Public Local Laws of Washington County were enacted by Ch. 617 of the Acts of 1912, and Judge Cobey's holding that Ch. 617 of the Acts of 1912 continued to be in force is not contested on this appeal.[1] Under Sec. 342A the Board is given general control and supervision of all matters pertaining to and affecting the public highways, roads and bridges of Washington County and "the power to enter into and make any and all contracts for materials, machinery, implements and equipment for the build-

---

1. Ch. 75 of the Acts of 1924 which provided for the amendment of these sections was rejected on a referendum vote. See Certificate of Secretary of State, Laws of Maryland of 1927, p. 1690. The inclusion of the provisions of the 1924 Act in Flack's Code of Public Local Laws (1930) and Everstine's Code of Public Local Laws of Washington County (1957) was held not to constitute a valid reenactment of Ch. 75 of the Acts of 1924. Each of these Codes was "legalized" and made evidence of the law, but neither was enacted as the law. Acts of 1929, Ch. 193; Acts of 1957, Ch. 31.

ing, construction and repairing of such public highways * * *." Section 342 B provides for the appointment of a Road Superintendent for the County, "who shall direct and manage the whole matter of grading and constructing public roads and the repair thereof * * * under the immediate control of the * * * County Commissioners * * *." Sec. 342 D sets forth in considerable detail the duties of the Road Superintendent and provides, among other things, that he "shall have supervision of the operation, preservation and repair of roadmaking and road maintaining machinery and equipment, and of the machinery, tools and equipment for the quarrying and crushing of stone * * *." Nowhere under these sections is power conferred on him to lease or purchase equipment.

The evidence makes it plain that the Board customarily permitted the Road Engineer to lease equipment for merely temporary purposes, usually for emergency work, as for snow removal, during a rush season, or in case of the breakdown of county equipment. The testimony of the four surviving members of the Board and of the Road Superintendent is all to this effect and it is not contradicted. It is also clear and uncontradicted that the Board as such never approved or ratified the contract, and that after the demonstration the County did not want the shovel under any circumstances.

We think it clear that the Road Engineer had neither statutory power nor delegated power to enter into a contract for a hire-purchase or rental agreement for a power shovel, such as is presented in this case. No merely temporary or emergency use was contemplated. The need to be met was a permanent one and there was no emergency situation whatever.

Under these circumstances the well established rule in this State as to the effect of the absence of power of a municipal officer to bind the municipal corporation by the agreement on which the plaintiff sues, is applicable. Perhaps it is most succinctly stated by Judge Henderson, speaking for this Court, in *Inter-City Co. v. Baltimore County, supra,* 218 Md. at 85, as follows: "It is, of course, elementary that one who deals with an officer of a municipality is charged with knowledge of the extent and limitation of his power." Recovery has been consistently denied, as in the *Inter-City* case, to plaintiffs

seeking to hold municipal corporations liable on agreements which the officer representing the municipality was not authorized to make. *Mayor & C. C. of Baltimore v. Eschbach*, 18 Md. 276; *Mayor & C. C. of Baltimore v. Reynolds*, 20 Md. 1; *Baltimore v. Musgrave*, 48 Md. 272; *Gontrum v. Baltimore City*, 182 Md. 370, 35 A. 2d 128; *Hanna v. Board of Education of Wicomico Co.*, 200 Md. 49, 87 A. 2d 846; *Roland Electrical Co. v. City of Baltimore*, 210 Md. 396, 414, 124 A. 2d 783. See also *Madison v. Reichelt*, 158 F. Supp. 401 (D. C. Md.). The whole matter is extensively reviewed in the *Gontrum* case, and we see no need to review it again here.

We see no occasion on the facts of this case to go into a question suggested by the appellee's brief with regard to the power of the Board of County Commissioners to delegate to the Road Superintendent authority to enter into any contract for the rental of equipment.

*Judgment affirmed, with costs.*